

U.S. Department of Justice

*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*    *United States Courthouse, Suite 9200*
*1 Courthouse Way*
*Boston, Massachusetts  02210*

June 23, 2005

**<u>VIA FACSIMILE (w/o enclosures)</u>**
**<u>VIA FEDERAL EXPRESS (w/ enclosures)</u>**

George F. Gormley, Esq.  **(Fax: 617-478-2755)**
George F. Gormley, P.C.
655 Summer Street
Boston, MA 02210

      Re:    **United States v. Dinikue Brown, a/k/a "Mouse"**
             **Criminal No.  4:05-cr-40024-FDS**

Dear Attorney Gormely:

     Pursuant to Rule 116.1 of the Local Rules of the United States District Court for the District of Massachusetts, the government hereby provides you with the following automatic discovery in the above-referenced case:

A.    <u>Rule 16 Materials</u>

    1.    <u>Statements of Defendant under Rule 16(a)(1)(A)</u>

    a.    <u>Written Statements</u>

     There are no relevant written statements made by the defendant Dinkue Brown, a/k/a "Mouse" (hereinafter, "Defendant") in the possession, custody, or control of the government, the existence of which is known to the undersigned attorney for the government.

    b.    <u>Recorded Statements</u>

     As listed below under Section D, consensual audio and video recordings were made of personal meetings and/or telephone conversations involving Defendant.  Copies of the recordings in the possession, custody, or control of the government are enclosed at Bates Nos. 136-52.

  c. <u>Grand Jury Testimony of the defendant</u>

Defendant did not testify before a grand jury in relation to this case.

  d. <u>Oral Statements to then Known Government Agents</u>

  The government is unaware of any oral statements made by Defendant before or after arrest, in response to interrogation by a person then known by Defendant to be a government agent, which the government intends to use at trial. If the undersigned attorney for the government becomes aware of any such statements, she will advise you at once.

  2. <u>Defendant's Prior Record under Rule 16(a)(1)(B)</u>

  A copy of Defendant's prior criminal record and related documents is enclosed at Bates Nos. 115-35.

  3. <u>Documents and Tangible Objects under Rule 16(a)(1)(C)</u>

  Enclosed and listed below are copies of papers, documents and other tangible items that are within the possession, custody, or control of the government, and which are material to the preparation of Defendant's defense or are intended for use by the government as evidence in chief at the trial of this case, or were obtained from or belong to Defendant. The originals may be inspected by contacting the undersigned Assistant U.S. Attorney and making an appointment to view the same at a mutually convenient time:

  a. Reports of investigation (DEA-6 reports) relating to this matter are enclosed at Bates Nos. 1-77;

  b. Cocaine base, also known as "crack cocaine," seized during the course of this investigation as more fully described in DEA-7 lab reports attached hereto as Bates Nos. 81-89;

  c. All of the documents and/or tangible items (including but not limited to the aforementioned audio and video recordings) assigned "N" exhibit numbers and more fully described in DEA-7a reports attached hereto as Bates Nos. 90-114;

  d. Copies of photographs attached as Bates Nos. 108-09, 126; and

  e. Audio and video recordings of phone calls and/or meetings with Defendant (Bates Nos. 136-54).

  4. <u>Reports of Examinations and Tests under Rule 16(a)(1)(D)</u>

  Copies of the drug analysis and weight reports regarding the controlled substances seized in this investigation (DEA-7 lab reports) are enclosed at Bates Nos. 81-89.

B.    Search Materials under Local Rule 116.1(C)(1)(b)

No search warrants were conducted of property belonging to Defendant in this case. Any items seized from Defendant at the time of his arrest for the instant charges may be examined by contacting the undersigned Assistant U.S. Attorney and making an appointment to view the same at a mutually convenient time. A copy of the DEA reports relating to Defendant's arrest on May 9, 2005 is enclosed at Bates Nos. 76-80, 113-14.

C.    Electronic Surveillance under Local Rule 116.1(C)(1)(c)

No oral, wire or electronic communications of your client were intercepted by the government in connection with this case pursuant to 18 U.S.C. §§ 2510-2518.

D.    Consensual Interceptions under Local Rule 116.1(C)(1)(d)

A written description of interceptions (as the term "intercept" is defined in 18 U.S.C. § 2510(4)) of oral communications, relating to the charges contained in the indictment made with consent of one of the parties to the communication ("consensual interceptions"), in which Defendant was intercepted or which the government intends to offer as evidence in its case-in-chief is set forth below (the reference to "N" exhibits are to the exhibit numbers assigned by DEA, which are reflected in DEA 7a reports (Bates Nos. 90-114). A copy of all recordings listed below is enclosed herewith at Bates Nos. 136-52.

**Audio Cassettes**[1]

1. <u>N-54; Bates No. 136</u>:   October 20, 2004 recorded telephone call between two (2) undercover DEA Agents (hereinafter, "UC1" and "UC2") and Defendant regarding the purchase of cocaine base, also known as "crack cocaine" (hereinafter, "crack cocaine").

2. <u>N-75; Bates No. 137</u>:   November 2, 2004 recorded telephone call between a confidential witness ("CW2") and Defendant to arrange for the purchase of crack cocaine.

4. <u>N-114; Bates No. 139</u>:   November 16, 2004 recorded conversation between UC1, UC2, and Defendant during the purchase of crack cocaine from Defendant.

5. <u>N-119; Bates No. 140</u>:   November 18, 2004 recorded telephone call between a confidential witness ("CW3") and Defendant to arrange for the purchase of crack cocaine.

6. <u>N-120; Bates No. 141</u>:   November 18, 2004 recorded conversation between

---

[1] Although not required, the government hereby produces a copy of the following related recording: (1) <u>N-96; Bates No. 138</u> (November 9, 2004 recorded telephone call between a confidential witness ("CW3") and Nydia Bernabel, a/k/a "Nonni," a/k/a "Nanni" ("Bernabel") to arrange for the purchase of crack cocaine).

UC2, CW3, and Defendant during the purchase of crack cocaine from Defendant.

7.  N-126; Bates No. 142:  November 29, 2004 recorded telephone calls between UC2 and Defendant to arrange for the purchase of crack cocaine.

8.  N-193; Bates No. 143:  February 3, 2005 recorded telephone call between a confidential witness ("CW4") and Defendant to arrange for the purchase of crack cocaine.

**DVDs**[2]

1.  N-39; Bates No. 144:  October 6, 2004 video and audio recorded meeting of initial UC introduction to Defendant.

2.  N-45; Bates No. 145:  October 13, 2004 video and audio recorded meeting between UC1 and Defendant during which UC1 bought crack cocaine from Defendant.

3.  N-55; Bates No. 146:  October 20, 2004 video and audio recorded meeting between UC1, UC2, and Defendant during which UC1 and UC2 bought crack cocaine from Defendant.

4.  N-121; Bates No. 150:  November 18, 2004 video and audio recorded meeting between UC2, CW3, and Defendant during which UC2 bought crack cocaine from Defendant.

5.  N-127; Bates No. 151:  November 29, 2004 video and audio recorded meeting between UC2 and Defendant during which UC2 bought crack cocaine from Defendant.

6.  N-194; Bates No. 152:  February 3, 2005 video and audio recorded meeting between UC1, CW4, and Defendant during which UC1 bought crack cocaine from Defendant.

No transcripts of the above referenced recordings have been created at this time.

E.  Unindicted Coconspirators under Local Rule 116.1(C)(1)(e)

---

[2]  Although not required, the government hereby produces a copy of the following related recordings:  (1) N-58; Bates No. 147 (October 21, 2004 video and audio recorded meeting between UC1, CW1, and two (2) couriers, including Veronica Marissa Roman, a/k/a "Leelee"("Roman"), during which UC1 bought crack cocaine from Bernabel via the couriers); (2) N-97; Bates No. 148 (November 9, 2004 video and audio recorded meeting between UC1 and Bernabel and Matthew Marsh during which UC1 bought crack cocaine); and (3) N-98; Bates No. 149 (November 9, 2004 video and audio recorded meeting between UC2, CW3, Bernabel and Matthew Marsh during which UC1 bought crack cocaine).

There is no conspiracy count charged in the indictment.

F.     Identifications under Local Rule 116.1(C)(1)(f)

On November 29, 2004, after Defendant sold crack cocaine to UC2 as charged in Count Four of the indictment, surveillance agents observed Defendant enter a vehicle with Massachusetts Registration No. 2636A and established mobile surveillance on the vehicle. A short time later, Fitchburg Police Department Officer Daigle approached the vehicle (which had stopped at Cote's variety store on High Street in Fitchburg, Massachusetts) as Defendant was entering the rear passenger seat. Officer Daigle engaged in conversation with Defendant, who initially identified himself as "Ronny Brown" and then as "Donny Brown," residing at 322 Elm Street, Fitchburg, Massachusetts. As described more fully in the next paragraph, further investigation by Detective James Gilbert of the Fitchburg Police Department revealed that "Ronny Brown," "Donny Brown," and "Mouse" were all aliases for Defendant Dinikue Brown of 326 Elm Street, Fitchburg, Massachusetts. A copy of the reports relating to this identification is enclosed at Bates Nos. 66-67.[3]

On November 29, 2004, Detective James Gilbert of the Fitchburg Police Department (who participated in this investigation as a DEA Task Force Agent) presented photo images of Defendant (a/k/a "Juneior Barklay," a/ka "Juneior Barkley," a/k/a "Jouinor Barklay") to UC2, who positively identified Defendant as the individual who sold crack cocaine to him on November 18, 2004 and November 29, 2004.

On November 30, 2004, the photo images of Defendant were also shown to UC1, who positively identified Defendant as the individual who sold crack cocaine to him on October 13, 2004, October 20, 2004, and November 16, 2004.

Copies of the photo images (initialed and dated by both UC1 and UC2), along with the DEA reports relating thereto, are enclosed at Bates Nos. 62-65, 107-09.

Fitchburg Police Officers who participated in the investigation of Defendant as DEA Task Force Agents were also able to identify Defendant as the individual who sold crack cocaine to UC1 and UC2 based on their observations as surveillance agents.

G.     Exculpatory Evidence under Local Rule 116.2

With respect to the government's obligation under Local Rule 116.2(B)(1) to produce "exculpatory evidence" as that term is defined in Local Rule 116.2(A), the government states as follows:

   1.     The government is aware of no evidence that would tend directly to negate

---

[3] As stated in this report, it was your client, Dinikue Brown, a/k/a "Mouse," who provided the aliases "Ronny Brown" and "Donny Brown" to Officer Daigle, and the driver of Massachusetts Registration No. 2636A who provided the California driver's license reflecting the name "Bryant Mack" to Officer Daigle.

5

Defendants' guilt concerning any count in the Indictment.

      2.     The government is aware of no information that would cast doubt on the admissibility of evidence that the government anticipates offering as part of its case-in-chief and that could be subject to a motion to suppress or exclude.

      3.     The following promises, rewards, or inducements have been given to the CWs whom the government anticipates calling in its case-in-chief:

Each of the CWs referenced above and/or in enclosed DEA reports has been a confidential informant for DEA in this investigation since in or about September 2004. Each of the CWs has received payments for his/her assistance to DEA in this investigation and has previously received payments from DEA and/or the Fitchburg Police Department for his/her involvement in past, unrelated investigations. The government will supplement this information, including a statement of specific amounts of payments received by each CW for his/her assistance, in subsequent disclosures at the appropriate time. In addition, although the government does not consider them promises, rewards or inducements, each of the CWs has also received reimbursements for expenses relating to his/her participation in these investigations.

Although the government is making the requisite disclosures about the CWs pursuant to Local Rule 116.(B)(1), the government declines to reveal the CWs' names at this time. Under separate cover, the government is sending a declination letter pursuant to Local Rule 116.6 to the Court in regard to this matter.

      4.     Except with respect to the CWs, the government is unaware that any of its named case-in-chief witnesses have criminal records. A copy of each of the CW's criminal records will be produced at the appropriate time.

      5.     No named percipient witness failed to make a positive identification with respect to the crimes described in the Indictment.

H.     <u>Other Matters</u>

The government recognizes that its duty of disclosure and discovery as set forth in Local Rule 116 and Rule 16 of the Federal Rules of Criminal Procedure is a continuing one.

In addition, please consider this letter to be a request for reciprocal discovery pursuant to Local Rule 116.1(D) and Fed. R. Crim. P. 16(b). I request that you provide a written response to my request for reciprocal discovery within 10 days of receipt of this letter.

As required by Local Rule 116.4(A)(3), I have, under separate cover, sent one (1) copy of the records containing the consensual recordings to Wyatt Detention Center, 950 High Street, Central Falls, RI, 02863, where Defendant is being detained, where Defendant Dinikue Brown, a/k/a "Mouse," is being detained.

I.     <u>Request for Alibi Information</u>

Pursuant to Fed. R. Crim. P. 12.1, the government hereby requests notice of any intention to offer an alibi defense to the charged offense or any of the above-captioned meetings or conversations.

If you have any questions about any of this information or wish to discuss this case with me, please call us at (617) 748-3100.

Very truly yours,

MICHAEL J. SULLIVAN
United States Attorney

By:   */s/ Lisa M. Asiaf*
LISA M. ASIAF
Assistant U.S. Attorney

Enclosures (Bates Nos. 1-152)